428 S.E.2d 556

The **COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Complainant,**

v.

**Thomas E. WHITE, a member of the West Virginia State Bar, Respondent.**

**No. 21483.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1993.

Decided March 16, 1993.

Maria Marino Potter, The West Virginia State Bar, Charleston, for complainant.

J. Timothy DiPiero, DiTrapano & Jackson, Charleston, for respondent.

**PER CURIAM:**

In this proceeding, the Committee on Legal Ethics of the West Virginia State Bar (Committee) asks this Court to discipline Thomas E. White following his guilty plea in the United States District Court to three misdemeanor charges for possession of cocaine, marijuana and percocet, respectively.[1] In entering his guilty plea, the

---

1. Our inherent and exclusive authority to regulate and control ethical violations is included within the Syllabus of *Christie v. West Virginia Health Care Cost Review Authority,* 176 W.Va.

respondent violated DR 1–102(A)(4), (A)(5), and (A)(6) of the West Virginia Code of Professional Responsibility.[2] The Committee recommends that we suspend Mr. White's license to practice law for two years and require him to pay the costs of these proceedings totaling $1,877.64.

The parties have submitted this case to us upon a stipulation of the facts. Therefore, the following facts are undisputed. At the time these offenses were committed, Mr. White was not only a licensed member of the West Virginia State Bar, but he was also the duly elected Prosecuting Attorney of Marshall County. Mr. White was first elected in 1980 and was re-elected in 1984 and in 1988.

In 1986, Mr. White became involved in a physical relationship with a woman and, during the course of this relationship, he began to use marijuana and cocaine in 1987. While Mr. White admits to using these substances, he stresses that he never purchased or obtained the drugs himself.[3] He further contends that from 1980, when he was first elected prosecutor, until 1987, he was not involved in the illicit use of drugs.[4] The State Bar has presented no evidence to the contrary.

Mr. White states that in 1987 he began to use percocet, a painkiller, for relief of an abscessed tooth. While his initial use of this drug was legitimate, he began to abuse the drug and was ultimately able to obtain a total of eleven prescriptions from his dentist. He admits that additional percocets were also obtained by his girlfriend during this period. Mr. White admits that he became addicted to the percocet and even stole a blank prescription form from his dentist. On July 26, 1988, he forged the name of his dentist to the form and used the prescription to obtain thirty percocets.

When Mr. White became aware of a federal investigation into his drug use, he authorized his attorneys to work out a plea agreement with the United States Attorney's office. On November 25, 1991, at Mr. White's direction, his counsel advised the Committee of the nature of the federal investigation. To Mr. White's credit, this information was given to the Committee over one month before any criminal charges were filed against him. At the time Mr. White provided the information regarding the federal investigation into his drug use to the Committee, it had no knowledge or suspicion of any wrongdoing by Mr. White. Counsel for Mr. White continued to keep the Committee apprised of the status of the investigation and prosecution.

On January 2, 1992, Mr. White notified the State Bar that he wished to be placed on inactive status and that he would not engage in the practice of law until further notice. On the following day, Mr. White entered into a plea agreement in which he agreed to plead guilty to three misdemeanor charges involving possession of controlled substances.

---

420, 345 S.E.2d 22 (1986), where we stated: " 'The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals.' Syl. pt. 1, *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982)."

2. Because the ethical violations occurred prior to January 1, 1989, the effective date of the current Rules of Professional Conduct, the violations carried the prior professional conduct rules citation to the Code of Professional Responsibility. The applicable text of DR1–102(A)(4), (5), and (6), is:

"A lawyer shall not:

\* \* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
The current relevant ethical rules are recited under Rule 8.4 of the Rules of Professional Conduct and Article VI of the By-Laws of the West Virginia State Bar.

3. Although Mr. White asserts that he did not purchase or obtain drugs himself, he admits that he gave money to his girlfriend to purchase the drugs for their use.

4. Mr. White admits that he tried marijuana in college and tried cocaine once in 1980 prior to his election as prosecutor. He pled guilty to cocaine possession stemming from the 1980 incident.

On January 13, 1992, Mr. White entered an inpatient rehabilitation facility for the treatment of alcohol and drug dependency. This was done even though Mr. White had not used a controlled substance for over a year and a half. He successfully completed the rehabilitation program and was released on February 4, 1992.

As a condition of his plea agreement, Mr. White was required to resign his position as prosecutor. Thereafter, on March 4, 1992, Mr. White pled guilty in the United States District Court for the Northern District of West Virginia to a three-count federal information charging possession of cocaine, marijuana and percocet, respectively. He was sentenced to six months in a federal correctional facility, followed by four months of home detention, and three years of probation. A $3,000 fine was also imposed.

Where there has been a final criminal conviction, proof of ethical violations is controlled by Syllabus Point 2 of *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989):

> "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction."

There being no substantial dispute as to the facts, the remaining issue involves the extent of the penalty. As earlier noted, the Committee recommends that Mr. White be suspended for two years and that he be required to pay the costs of the proceeding. On the other hand, Mr. White requests that the two-year suspension recommended by the Committee be modified to allow him to practice law for the final six months of his suspension under the supervision of another lawyer.[5] Furthermore, Mr. White proposes that during the supervised practice he would perform five hours of *pro bono* work a week for the West Virginia Legal Services Plan, Inc., and submit to random drug testing.

The considerations we must take into account when meting out punishment for

ethical violations were stated in Syllabus Point 5 of *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989):

> " 'In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)."

As evidence in support of mitigating the severity of the penalty to be imposed upon him, Mr. White points to the fact that on January 2, 1992, he asked the State Bar to place him on inactive status and informed the State Bar that he would not practice law until further notice. He also asserts that, through his attorney, he advised the State Bar of the federal investigation of his drug use before any ethics proceedings had been initiated against him. He also followed the recommendation of the State Bar's Impaired Lawyer Committee to enroll in an inpatient rehabilitation program that he thereafter successfully completed.

While these actions are commendable, they can also be viewed as a prudent realization of the substantiality of the government's case. The attorney's use of illicit drugs was not isolated and continued over a period of approximately two years.

■ Of even more significance is the fact that during this period, he was the elected prosecuting attorney in Marshall County. We have taken pains to stress that a lawyer who holds public office is held to a higher ethical standard simply because of his position of public trust. The argument was advanced in *Committee on Legal Ethics v. Roark, supra*, that an attorney who was a public official should not

---

5. Mr. White proposes that he be permitted to practice law under the supervision of a former

Committee member for the final six months of his suspension.

be held to any elevated standard. In rejecting this argument, we said:

"In *Graf [v. Frame*, 177 W.Va. 282, 352 S.E.2d 31 (1986) ], we made this observation: '[A]n attorney who is a public official is held to a high standard of conduct because of his or her (1) professional and (2) public trustee responsibilities.' 177 W.Va. at 288, 352 S.E.2d at 38. We went on in *Graf* to quote from *Sanders v. Mississippi State Bar Ass'n*, 466 So.2d 891, 893 (Miss.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985): ' "Lawyer insensitivity to ethical impropriety [or perceived ethical impropriety] is one of the primary sources of this lack of public confidence in the Bar. *The problem is exacerbated when ethical violations are committed by an attorney holding an important public office.*" ' 177 W.Va. at 289, 352 S.E.2d at 38. (Emphasis added)." 181 W.Va. at 265, 382 S.E.2d at 318.

And in Syllabus Point 3 of *Roark*, we stated:

"Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." [6]

In *Roark*, we dealt with an attorney who used illegal drugs both when he was the prosecuting attorney for Kanawha County and later while he was the mayor of the City of Charleston. He vigorously denied his involvement in drug use, but ultimately entered a guilty plea to six misdemeanor counts of a thirty-count federal indictment. The federal court had given him a six-month sentence followed by three years probation. We ordered that he be suspended from the practice of law for a period of three years.

In *Roark*, we noted that in a disciplinary proceeding such as this we will consider the facts and circumstances of each case, rather than attempt to create a uniform standard of disciplinary action to apply in all cases. In Syllabus Point 4, we stated:

" ' "In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances [in each case], including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action." Syl. pt. 2, *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976).' Syllabus Point 2, *Committee on Legal Ethics v. Higinbotham*, 176 W.Va. 186, 342 S.E.2d 152 (1986)."

In this case, the number of criminal charges are not as great as the number imposed in *Roark, supra,* because the attorney was forthright with the federal authorities and, consequently, was able to achieve a more favorable result by a plea to only three misdemeanor drug offenses. It is this cooperation, coupled with Mr. White's contrition, that undoubtedly motivated the Committee to recommend a two-year suspension.

■ In considering the appropriate disciplinary action to be taken against Mr. White, we must balance the seriousness of his unethical and illegal conduct while holding public office with his cooperation with both the federal authorities and the Committee and his contrition and acknowledgement of his wrongdoing. We believe the two-year suspension, retroactive to January 2, 1992 (the date Mr. White voluntarily placed himself on inactive status with the State Bar), recommended by the Committee, appropriately accounts for both the seriousness of Mr. White's crimes while he occupied a position of public trust, and the mitigating facts and circumstances of his later behavior.

However, Mr. White also proposes a lessening of the severity of the recommended suspension. He suggests that we permit

---

**6.** Mr. White accepts that elected public officials should be held to a higher ethical standard because of their positions of public trust.

him to practice law under the supervision of another attorney during the final six months of his suspension. He further suggests that he be ordered to perform *pro bono* community work and to submit to random drug testing during that time. We reject Mr. White's proposal because we believe the recommended sanction appropriately reflects the facts and circumstances of this case.[7] We believe that any lessening of the recommended suspension would not serve as an adequate deterrent to other members of the Bar or serve to restore public confidence in the ethical standards of the profession. Syllabus Point 5, *Roark, supra.*

For the foregoing reasons, the Court suspends Mr. White's license to practice law for two years, retroactive to January 2, 1992, and orders him to pay the costs of this proceeding.

Two-year suspension retroactive to January 2, 1992, and costs.

7. Mr. White did not make his proposal to the Committee, and first suggested the imposition of a lesser penalty upon submission of his case to this Court. We note that, in certain circumstances, we will consider alternatives to suspension. For example, in Syllabus Point 3 of *Committee on Legal Ethics v. Mitchell*, 187 W.Va. 287, 418 S.E.2d 733 (1992), we stated:

"In an appropriate case involving legal ethics, this Court would consider requiring community service as a legitimate sanction provided that the details of the proposed service are sufficiently specific that the Legal Ethics Committee can appropriately evaluate them and that the community service meets our requirements for neutrality."

Although Mr. White has provided a detailed proposal, we do not find this to be an appropriate case.