# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2017 Term

No. 15-0977

**FILED**
**April 5, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LAWYER DISCIPLINARY BOARD,**
Petitioner

V.

**JAMES J. PALMER, III,**
**A MEMBER OF THE WEST VIRGINIA STATE BAR,**
Respondent

---

**Lawyer Disciplinary Proceeding**
**No. 14-05-564**

**LAW LICENSE SUSPENDED AND OTHER SANCTIONS**

---

Submitted: March 8, 2017
Filed:  April 5, 2017

Jessica H. Donahue Rhodes
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Attorney for the Petitioner

James J. Palmer, III
Bluefield, West Virginia
Respondent, *Pro se*

JUSTICE DAVIS delivered the Opinion of the Court.

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary

Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4. "Although Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the factors to be considered in imposing sanctions after a finding of lawyer misconduct, a decision on discipline is in all cases ultimately one for the West Virginia Supreme Court of Appeals. . . ." Syllabus point 5, in part, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be

imposed." Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7.     "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.     """"In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987)." Syllabus Point 5,

iii

*Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).' Syllabus

Point 2, *Committee on Legal Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993)."

Syllabus point 4, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377

(1994).

**Davis, Justice:**

This lawyer disciplinary proceeding against James J. Palmer, III ("Mr. Palmer"), was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The disposition recommended by the Hearing Panel Subcommittee ("HPS") of the LDB includes a thirty-day suspension with automatic reinstatement; six months of probation with supervised practice; completion of an additional six hours of continuing legal education during the current reporting period, in addition to the hours already required, with three of the hours being in the area of ethics and office management, and three hours being in the representation of clients in petitions for writ of *habeas corpus*; and payment of the costs of the disciplinary proceeding in this matter. ODC agrees with the sanctions recommended by the HPS and would add that, upon being suspended, Mr. Palmer should promptly comply with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure, which imposes a mandatory duty upon suspended lawyers to, *inter alia*, inform clients of the suspension and file an affidavit with the Supreme Court. Having carefully reviewed the record submitted, the parties' briefs, and the relevant legal precedent,

1

as well as having considered the oral argument presented,[1] this Court finds that the sanctions recommended by the HPS and ODC are appropriate under the circumstances of this case.

# I.

# FACTUAL AND PROCEDURAL HISTORY

Mr. Palmer was admitted to the West Virginia State Bar on October 13, 1998, and practices law in Bluefield, West Virginia. The underlying conduct that prompted the filing of the instant proceeding, along with details of the manner in which these disciplinary proceedings progressed, are set out below.

## A. Underlying Habeas Action and Ethics Complaint

On May 14, 2010, a pro se petition seeking a writ of *habeas corpus* was filed in the Circuit Court of McDowell County by Mr. Stanford T. Allen, Jr. ("Mr. Allen"), the complainant herein.[2] After several other lawyers had been appointed and subsequently

---

[1]On March 10, 2017, Mr. Palmer filed a "Motion to Correct the Record After Case Has Been Submitted" to correct a misstatement made by counsel for ODC during oral argument. ODC filed its response to the motion on March 13, 2017. In its response, ODC conceded that a misstatement had occurred, but argued that the motion should be denied insofar as the proper facts are correctly reflected in the record. Because the facts are correctly represented in the appellate record, we deny Mr. Palmer's motion. *See Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 600, 694 S.E.2d 815, 933 (2010) ("[I]t is clear that this Court may rely on representations made by counsel during oral argument regarding an issue that is not addressed in the record on appeal.").

[2]Mr. Allen is an inmate incarcerated in the Mount Olive Correctional Complex.
(continued...)

withdrew, Mr. Palmer was appointed to represent Mr. Allen in this *habeas corpus* matter by circuit court order entered on June 25, 2013. The record reflects that Mr. Palmer met with Mr. Allen for about two or three hours in June 2013, prior to Mr. Palmer being appointed as *habeas* counsel for Mr. Allen. During this meeting, the two men discussed the grounds Mr. Allen desired to raise in his *habeas* petition. Thereafter, Mr. Palmer met with Mr. Allen on an undisclosed date for approximately one hour; on June 4, 2014, at the McDowell County Courthouse, for an unspecified amount of time; and around August 22, 2014, for approximately five minutes during which Mr. Palmer obtained Mr. Allen's signature on the amended *habeas* petition he had prepared. A short phone conference also occurred on September 16th, 2014, during which Mr. Allen expressed his dissatisfaction with the amended *habeas* petition that had been prepared by Mr. Palmer, and he instructed Mr. Palmer not to file the petition.[3] In addition, during the period between Mr. Palmer's June 25, 2013, appointment and October 21, 2014, Mr. Allen sent twenty-two letters to Mr. Palmer purportedly addressing issues to be included in the amended *habeas* petition. None of the letters were answered in writing by Mr. Palmer.

---

[2](...continued)
He was convicted in 1999 of triple homicide.

[3]Mr. Palmer additionally contends that he made at least two trips to the McDowell County Prosecuting Attorney's Office to copy Mr. Allen's extensive file.

3

On October 21, 2014, the LDB received an ethics complaint from Mr. Allen alleging that Mr. Palmer had communicated with him by only one short telephone conference and one five minute visit since being appointed as *habeas* counsel. Mr. Allen further complained that he had not received any response to his twenty-two letters to Mr. Palmer.[4] By letter dated October 23, 2014, ODC notified Mr. Palmer of the complaint and provided him a copy of the same. He was asked to respond to the allegations within twenty days.

After Mr. Allen filed his ethics complaint and a copy was sent to Mr. Palmer, a status hearing was held in the underlying *habeas* matter on November 19, 2014. Both Mr. Allen and Mr. Palmer were present at the hearing, following which a scheduling order was entered on November 24, 2014. The scheduling order set a deadline of December 31, 2014, for the filing of Mr. Allen's amended *habeas* petition and a *Losh* checklist of grounds asserted and waived in the post-conviction *habeas corpus* proceeding.[5] The State of West Virginia was to file its response no later than February 6, 2015, with Mr. Allen's reply being due no later than March 6, 2015. An omnibus hearing was scheduled for April 20, 2015.

---

[4]There was an additional allegation in the complaint that Mr. Palmer had threatened Mr. Allen's brother, but this allegation is not addressed by ODC and was not included in the statement of charges against Mr. Palmer.

[5]*See Losh v. McKenzie*, 166 W. Va. 762, 768-70, 277 S.E.2d 606, 611 (1981) (setting out minimum grounds that *habeas* counsel must discuss with client).

4

Meanwhile, Mr. Palmer's response to Mr. Allen's ethics complaint was received by ODC on December 1, 2014. In his response, Mr. Palmer explained that he had met with Mr. Allen on two occasions for a significant amount of time in addition to the brief meetings described in the ethics complaint.[6] Mr. Palmer averred that the five minute visit was for the purpose of obtaining Mr. Allen's signature on certain "*habeas corpus* forms." With respect to the twenty-two letters sent by Mr. Allen, Mr. Palmer admitted that he had received the letters, but explained that the letters contained factual information and were not "case inquiry nor request letters" requiring a response. Nevertheless, Mr. Palmer asserted that he had spoken to Mr. Allen about the letters and had requested that Mr. Allen send clearer letters with simpler language as opposed to legal jargon as used in the twenty-two letters.

Thereafter, with the ethics proceeding pending, Mr. Palmer failed to file Mr. Allen's amended *habeas* petition by the December 31, 2014, deadline. Mr. Palmer later explained that he first attempted to fax the amended *habeas* petition and *Losh* checklist *after* normal business hours on December 31, 2014, but the transmission did not go through.[7]

---

[6]Mr. Palmer apparently was referring to the meeting that occurred prior to his appointment as *habeas* counsel and the meeting that occurred on an undisclosed date.

[7]The record indicates that Mr. Palmer mistakenly believed that he could file documents by fax at any time, regardless of whether the circuit court clerk's office was open for business. To the contrary, under Rule 12.03(a) of the West Virginia Trial Court Rules, "[e]ach circuit clerk shall have a facsimile machine available for court-related business (continued...)

5

Thus, on January 7, 2015, Mr. Allen filed a *pro se* motion for appointment of substitute counsel based, in part, on Mr. Palmer's failure to file an amended *habeas* petition. The next day, Mr. Palmer filed the *Losh* checklist by fax; however, the amended *habeas* petition remained unfiled.

By letter to the Honorable Judge Booker T. Stephens, dated January 17, 2015, Mr. Allen again requested the appointment of substitute counsel to represent him in his *habeas* proceeding based, in part, upon Mr. Palmer's failure to communicate and failure to file an amended *habeas* petition on Mr. Allen's behalf.

ODC, by letter dated February 10, 2015, asked Mr. Palmer to address the reasons he had not complied with the circuit court's order imposing a deadline of December 31, 2014, for filing Mr. Allen's amended *habeas* petition and *Losh* checklist.

After requesting and receiving permission from the circuit court to file the amended *habeas* petition out of time, Mr. Palmer finally filed the petition on March 6, 2015,

---

[7](...continued)
*during regular business hours and such additional hours as may be established by the chief judge.*" (Emphasis added). Mr. Palmer has failed to establish that the Chief Judge of the McDowell County Circuit Court has established additional hours for receiving fax transmissions.

more than two months after the circuit court's deadline for the filing. Both Mr. Palmer and Mr. Allen had signed the petition, but no date for the signatures was provided.

Then, by letter dated March 10, 2015, Mr. Palmer responded to ODC's inquiry of February 10, 2015. He explained that the *Losh* checklist was filed late due to difficulties he encountered in faxing the form to the circuit court. He further asserted that Mr. Allen had "not been prejudiced in any way by [Mr. Palmer's] delayed filing" as it was an "inconsequential matter" that was "easily cured." Although Mr. Palmer included a copy of the circuit court's order permitting him to file the *Losh* checklist and amended *habeas* petition out of time, he failed to inform ODC whether the amended *habeas* petition had, in fact, been filed.

On March 23, 2015, Mr. Allen corresponded with ODC and averred that he did not sign the *Losh* checklist and that he never saw an amended *habeas* petition prepared by Mr. Palmer. On the same date, ODC sent a letter to Mr. Palmer seeking clarification as to whether the amended *habeas* petition had been timely filed, and requesting an explanation in the event that it had not been timely filed. ODC received a response to this letter from Mr. Palmer on March 26, 2015, wherein Mr. Palmer asserted that he attempted to file the amended *habeas* petition by facsimile on December 31, 2014, but subsequently discovered

that the fax transmittal had not been completed.[8] He claimed to have unsuccessfully attempted to fax the documents various times over the course of the next several days. He stated that, finally, on January 8, 2015, he successfully transmitted the *Losh* checklist by fax to the circuit court, but he inadvertently omitted the amended *habeas* petition from the transmission. According to Mr. Palmer, after receiving ODC's inquiry regarding the amended *habeas* petition, he spoke to the McDowell County Prosecuting Attorney who, having no objection to the late filing of the amended *habeas* petition, signed an agreed order requesting leave to permit the late filing. Judge Stevens signed the same, and the amended *habeas* petition was filed on March 6, 2015.

By letter dated March 27, 2015, ODC sought an explanation from Mr. Palmer as to why there was no date on the amended *habeas* petition and why it took him so long to file the same. Mr. Palmer responded by letter dated March 30, 2015, in which he explained that he observed the missing date just prior to filing the amended petition, and he intentionally left it blank at that time because he could not be certain of the date upon which it was actually signed, and he was unsure of the propriety of altering the form with the addition of a date. He further explained that the late filing of the amended *habeas* petition was due to "nothing more than inadvertence," and he had no ill motive or intent. By

---

[8]See note 7, *supra,* for details regarding Mr. Palmer's unsuccessful attempts at filing the subject documents by fax transmission.

subsequent letter dated March 31, 2015, Mr. Palmer asserted that, in his earlier correspondence, he had "failed to point out that the filing of the [amended *habeas* petition] was initially delayed because Mr. Allen had specifically instructed [him] not to file anything in his case." Mr. Palmer explained further that, "[a]dmittedly, that does not fully account for the delay. Nevertheless, his request was the cause of the initial delay – certainly not all of the delay, just the initial delay."

Mr. Palmer's representation of Mr. Allen ended when Mr. Palmer's motion seeking to withdraw as counsel was granted by circuit court order entered April 30, 2015.[9]

### B. Statement of Charges and Recommendation of the HPS

On October 9, 2015, the LDB issued a one-count Statement of Charges alleging Mr. Palmer violated the following West Virginia Rules of Professional Conduct:[10] Rule 1.3[11]

---

[9]Prior to Mr. Palmer's motion, Mr. Allen had filed at least two motions requesting that the circuit court appoint substitute counsel due, in part, to Mr. Palmer's repeated failures to communicate and his continuing failure to file the amended *habeas* petition.

[10]This Court amended the West Virginia Rules of Professional Conduct by order dated September 29, 2014. The Amended Rules took effect on January 1, 2015. Because Mr. Palmer's complained of conduct occurred both prior to and following the January 1, 2015, effective date for the Amended Rules, he was charged under both the old

(continued...)

9

for failing to act with reasonable diligence by failing to timely file the *Losh* list and amended petition in Mr. Allen's *habeas* case; Rule l.4(a)(3),[12] and Rule 1.4(a) of the old Rules of Professional Conduct,[13] by failing to keep Mr. Allen reasonably informed about the status of the *habeas* matter; Rule 3.2[14] by engaging in dilatory practices and failing to take reasonable efforts consistent with his client's objectives; and Rule 8.4(d)[15] by failing to move Mr. Allen's case forward as required by the circuit court's scheduling order. The Statement of Charges further acknowledged that Mr. Palmer "has had prior discipline in the form of admonishments issued against him involving violations of the Rules of Professional Conduct." In this regard, Mr. Palmer "was admonished for violations of Rules 1.1 and 1.3

---

[10](...continued)
Rules and the current Rules. For Rules that were not changed as a result of the amendments, or were violated by Mr. Palmer's conduct occurring after the effective date of the Amended Rules, only the current version of the Rule is cited and quoted.

[11]Rule1.3 of the Amended Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[12]Rule l.4(a)(3) of the Amended Rules of Professional Conduct provides that "[a] lawyer shall: . . . (3) keep the client reasonably informed about the status of the matter."

[13]To the extent that this alleged violation pertains to conduct occurring prior to January 1, 2015, the pre-amendment version of Rule 1.4(a) of the Rules of Professional Conduct is applied. Under this rule, "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[14]Rule 3.2 of the Amended Rules of Professional Conduct provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[15]Rule 8.4(d) of the Amended Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice."

in February of 2013;[16] for violations of Rules 1.3, 1.4, and 8.1(b) in March of 2014;[17] and

for violations of Rules 1.3, 1.4(a), and 8.l(b) in June of 2014."[18]

Mr. Palmer filed his answer to the Statement of Charges on November 16, 2015, but he failed to provide his mandatory discovery, which was due no later than December 4, 2015. As a result, ODC filed a motion seeking to exclude testimony of witnesses and documentary evidence or testimony of mitigating factors. The HPS denied the motion, in part, and granted Mr. Palmer leave to provide a witness list and documents by February 5, 2016. A hearing before the HPS was held on June 8, 2016.

Following a hearing at which testimony was provided by Mr. Allen, McDowell County Assistant Prosecuting Attorney Melissa Davis,[19] and Mr. Palmer, the HPS found that

---

[16]The February 2013 admonishment was in relation to Mr. Palmer's conduct in two bankruptcy proceedings.

[17]The March 2014 admonishment was in relation to Mr. Palmer's conduct in civil litigation.

[18]The June 2014 admonishment was in relation to Mr. Palmer's handling of an estate.

[19]Among other things, Assistant Prosecutor Melissa Davis testified regarding the typical course of a *habeas* proceeding in McDowell County. While she stated that amended petitions are often more detailed than the amended petition filed by Mr. Palmer in the underlying matter, it is not uncommon for amended *habeas* petitions to be completed in a manner similar to that filed by Mr. Palmer.

11

Mr. Palmer violated Rules 1.3, 1.4(a), l.4(a)(3), 3.2, and 8.4(d), as charged. The HPS

recommends the following sanctions:

> a.     That [Mr. Palmer's] law license be suspended for a
>        period of thirty (30) days, with automatic reinstatement
>        of his license to practice law pursuant to the provisions
>        and requirements of Rule 3.31 of the Rules of Lawyer
>        Disciplinary Procedure;
>
> b.     That [Mr. Palmer] be ordered to complete an additional
>        six (6) hours of continuing legal education during the
>        current reporting period, specifically, three (3) hours in
>        the area of ethics and office management and three (3)
>        hours in the representation of clients in petitions for writ
>        of *habeas corpus*, in addition to the hours already
>        required;
>
> c.     That upon [Mr. Palmer's] reinstatement, he would be
>        placed on six (6) months of probation with supervised
>        practice by an active attorney in his geographic area in
>        good standing with the West Virginia State Bar and
>        agreed upon by the ODC. The goal of the supervised
>        practice will be to improve the quality and effectiveness
>        of [Mr. Palmer's] law practice to the extent that [his]
>        sanctioned behavior is not likely to recur; and
>
> d      That prior to being automatically reinstated, pursuant to
>        Rule 3.15, [Mr. Palmer] pay the costs of the disciplinary
>        proceeding in this matter.

(Footnote omitted).

Before this Court, ODC agrees with the sanctions recommended by the HPS

and would add that, upon being suspended, Mr. Palmer should promptly comply with Rule

3.28 of the Rules of Lawyer Disciplinary Procedure,[20] which imposes a mandatory duty upon

---

[20]Pursuant to Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure,

    (a) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court [or] agency, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said clients to seek legal advice elsewhere. Failure of a disbarred or suspended lawyer to notify all clients of his or her inability to act as a lawyer shall constitute an aggravating factor in any subsequent disciplinary proceeding.

    (b) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, each of the lawyer's clients who is involved in litigated or administrative matters or proceedings pending, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said client to promptly substitute another lawyer in his or her place. In the event the client does not obtain substitute counsel before the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended lawyer to move pro se in the court or agency in which the proceeding is pending for leave to withdraw as counsel. The notice to be given to the lawyer for any adverse party shall state the place of residence of the client of the disbarred or suspended lawyer.

    (c) The disbarred or suspended lawyer, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature. During the period from the entry date

(continued...)

13

suspended lawyers to, *inter alia*, inform clients of a suspension and file an affidavit with the Supreme Court.  Mr. Palmer admits that his communication with his client should have been better; nevertheless, Mr. Palmer asks this Court to impose no sanctions for his misconduct.

## II.

## STANDARD OF REVIEW

It is well settled that

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's]

---

[20](...continued)
of the order to its effective date, however, the lawyer may wind up and complete, on behalf of any client, all matters which were pending on the entry date.  Within twenty days after the effective date of the disbarment or suspension order, the lawyer shall file under seal with the Supreme Court of Appeals an affidavit showing (1) the names of each client being represented in pending matters who were notified pursuant to subsections (a) and (b); (2) a copy of each letter of notification which was sent; (3) a list of fees and expenses paid by each client and whether escrowed funds have been or need to be reimbursed; and (4) an accounting of all trust money held by the lawyer on the date the disbarment or suspension order was issued. Such affidavit shall also set forth the residence or other address of the disbarred or suspended lawyer where communications may thereafter be directed and a list of all other courts and jurisdictions in which the disbarred or suspended lawyer is admitted to practice.  A copy of this report shall also be filed with the Office of Disciplinary Counsel.

> recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

It also has been made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). With due regard for these standards, we now consider the instant disciplinary matter.

## III.

## DISCUSSION

The HPS bases its recommended sanctions primarily upon Mr. Palmer's conduct in failing to timely file the amended *habeas* petition and *Losh* checklist in accordance with the deadline for such filings established by the circuit court, and by failing thereafter to have any communication whatsoever with his client to explain the status of the *habeas* action or of any plans to remedy the missed deadline. The fact of the missed deadline and the absence of communication thereafter is undisputed. Based upon these undisputed facts, we find that ODC has met its burden of establishing by clear and convincing evidence that Mr. Palmer violated Rules 1.3, 1.4(a), l.4(a)(3), 3.2, and 8.4(d). *See* Syl. pt. 1, in part,

15

*Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence. . . ."). Thus, we proceed to analyze the proposed sanctions pursuant to the factors established in the Rules of Lawyer Disciplinary Procedure. In this regard, this Court has held that

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). We address each of the foregoing factors in turn, while bearing in mind that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). We also are cognizant that, "[a]lthough Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the factors to be considered in imposing sanctions after a finding of lawyer misconduct, a decision on discipline is in all

16

cases ultimately one for the West Virginia Supreme Court of Appeals. . . ." Syl. pt. 5, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722.

### A. *Duty Owed to Client, Public, Legal System, or Profession*

The HPS found that Mr. Palmer violated his duties of diligence and communication to his client, Mr. Allen, by failing to diligently work on the *habeas* matter and by failing to keep Mr. Allen reasonably informed about the same. Similarly, the HPS found that Mr. Palmer violated his duty to the legal system by failing to comply with the circuit court's scheduling order, thereby failing to adhere to the rules of procedure that govern the administration of justice in our State. We agree. Although Mr. Palmer met with Mr. Allen in June 2013 prior to being appointed to represent him later that same month, the record reflects that, after being appointed as counsel for Mr. Allen, Mr. Palmer did not meet with him again until June of the following year. Mr. Palmer then failed to meet the circuit court's deadline of December 31, 2014, for filing Mr. Allen's amended *habeas* petition and *Losh* list, even though, by this time, Mr. Palmer knew of the ethics complaint against him. He also failed to seek an extension of time within which to file the documents. The *Losh* list was not filed until January 8, 2015, and the *habeas* petition, which purportedly was ready for filing in August 2014, was not filed until March 6, 2015, after Mr. Palmer obtained permission from the circuit court to file the petition out of time. Although Mr. Palmer characterizes his inaction as inconsequential and easily cured, he fostered his earlier lack of

17

communication by making no effort to advise Mr. Allen of the missed deadline or of his belief that the situation could be easily remedied. Meanwhile, Mr. Allen remained in prison with no idea what, if any, progress was being made in his *habeas* case. As the HPS observed, even though Mr. Palmer was faced with a difficult client, he nevertheless maintained a duty of communication.

### B. Intentional, Knowing, or Negligent Actions

The second factor we review is whether Mr. Palmer's actions were carried out intentionally, knowingly, or negligently. The HPS found that Mr. Palmer acted knowingly and negligently in failing to properly handle Mr. Allen's *habeas* petition, and we agree. Mr. Palmer was aware of the deadline of December 31, 2014, for filing the amended petition and the *Losh* list, yet he failed to meet that deadline or to request an extension. His first attempt to file the documents was by fax *after* normal business hours on the day of the December 31, 2014, deadline. This attempt was based upon Mr. Palmer's mistaken, or negligent, belief that he could submit filings by fax at any time.[21] He knew the fax transmission had not been successful. Nevertheless, he did not successfully accomplish filing the *Losh* list until January 8, 2015, and the amended *habeas* petition was not filed for more than two months after the deadline. By virtue of the ethics complaint initiated by his client, Mr. Palmer also knew of

---

[21]See note 7, *supra,* for facts related to Mr. Palmer's mistaken belief regarding filings by fax.

18

Mr. Allen's concerns about his lack of communication. Nevertheless, Mr. Palmer remained uncommunicative. Thus, Mr. Palmer's actions were both knowing and negligent.

### *C. Potential and Real Injury*

The HPS found that, contrary to Mr. Palmer's assertion that there was no injury caused by his conduct, Mr. Palmer's misdeeds resulted in both potential and real injury. Although the harm in this case, both potential and real, is far from severe, we do agree that they existed. The potential for injury arising from Mr. Palmer's failure to timely file the *Losh* checklist and amended *habeas* petition was the risk that the circuit court would not accept the late filing of these documents thereby foreclosing Mr. Allen's chance for *habeas* relief at the circuit court level. The real injury produced by Mr. Palmer's misconduct is the delay in the *habeas* proceedings. Mr. Palmer's representation of Mr. Allen lasted nearly two years, and all that was accomplished for the benefit of Mr. Allen during that time was the late filing of both a *Losh* checklist and a bare bones amended *habeas* petition. Moreover, Mr. Palmer's dilatory conduct and failure to properly communicate with his client prompted these disciplinary proceedings, which have necessitated Mr. Palmer's withdrawal as counsel and caused further delay in Mr. Allen's *habeas* proceedings as new counsel must now engage in the lengthy process of becoming familiar with Mr. Allen's voluminous criminal record. Although the success of Mr. Allen's *habeas* action is uncertain, the lack of finality in the *habeas* matter also is an adverse consequence.

19

### D. *Aggravating and Mitigating Factors*

This Court has explained that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). On the other hand, "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *id.* Thus,

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *id.*

The HPS found multiple aggravating factors present in this case:

> (1) prior disciplinary offenses for similar misconduct, an admonishment for violations of Rules 1.1 and 1.3 in February of 2013; an admonishment for violations of Rules 1.3, 1.4, and 8.1(b) in March of 2014; and an admonishment for violations of Rules 1.3, 1.4(a), and 8.1(b) in June of 2014 . . . ;

20

(2) a pattern of misconduct of failing to be diligent in client matters and failing to communicate properly with his clients; and

(3) substantial experience in the practice of law since 1998.

The only mitigating factor found by the HPS was the absence of a dishonest or selfish motive, which is evidenced by the fact that Mr. Palmer's representation of Mr. Allen was provided on a *pro bono* basis. Nevertheless, the HPS observed that the duty owed to a *pro bono* client is the same as a paying client. We accept these findings.

### E. Sanctions

In deciding upon the appropriate sanctions, we observe that,

"""[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).' Syllabus Point 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989)." Syllabus Point 2, *Committee on Legal Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993).

Syl. pt. 4, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377. Based upon our consideration of all of the factors set out in Rule 3.16 and Syllabus point 4 of *Jordan*, we find the sanctions recommended by the HPS and ODC to be appropriate. While we understand the inherent

21

difficulties present in *habeas corpus* proceedings, we nevertheless are troubled by the dilatory conduct and communication issues that seem to be recurring in connection with Mr. Palmer's practice of law. Three admonishments imposed on Mr. Palmer for similar conduct do not appear to have had the desired effect of curtailing this problematic behavior, even though they were near in time to, or during, his representation of Mr. Allen. Indeed, Mr. Palmer was appointed to represent Mr. Allen in June 2013, and he received admonishments in February 2013, March 2014, and June 2014. Because prior admonishments have not been effective in correcting Mr. Palmer's misconduct, we find that a thirty-day suspension with automatic reinstatement, along with the other recommended sanctions, to be appropriate punishment and also necessary "to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. pt. 4, in part, *id.* This sanction also is in accord with sanctions this Court has imposed for similar misconduct. *See, e.g., Lawyer Disciplinary Bd. v. Sturm*, 237 W. Va. 115, 785 S.E.2d 821 (2016) (imposing ninety-day suspension for failure to file petition for writ of *habeas corpus* along with other violations); *Lawyer Disciplinary Bd. v. Grindo*, 231 W. Va. 365, 371, 745 S.E.2d 256, 262 (2013) (per curiam) (imposing a public reprimand, but commenting that, "in light of Mr. Grindo's past history of being admonished by the Investigative Panel of the LDB, there is case law that supports a 30-day suspension of Mr. Grindo's law license"); *Lawyer Disciplinary Bd. v. Sullivan*, 230 W. Va. 460, 740 S.E.2d 55

22

(2013) (per curiam) (imposing thirty-day suspension on lawyer previously admonished for similar conduct on five separate occasions).

## IV.

## CONCLUSION

For the foregoing reasons, we impose the following sanctions:

(1) Mr. Palmer's law license is suspended for a period of thirty days, with automatic reinstatement pursuant to the provisions and requirements of Rule 3.31 of the Rules of Lawyer Disciplinary Procedure.

(2) Mr. Palmer shall, in addition to the hours already required, complete six additional hours of continuing legal education during the current reporting period. Three of these hours shall be in the area of ethics and office management, and three shall be in the representation of clients with respect to petitions for writ of *habeas corpus*.

(3) Upon Mr. Palmer's reinstatement, he shall be placed on six months of probation with his practice supervised by an attorney who is active in his geographic area, in good standing with the West Virginia State Bar, and agreed upon by ODC. The goal of

23

the supervised practice will be to improve the quality and effectiveness of Mr. Palmer's law practice so that his sanctioned behavior is not likely to recur.

(4) Mr. Palmer shall promptly comply with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure, which imposes a mandatory duty upon suspended lawyers to, *inter alia*, inform clients of a suspension and file an affidavit with this Court.

(5) Prior to being automatically reinstated, Mr. Palmer shall pay the costs of the disciplinary proceeding in this matter pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions Imposed.