632 S.E.2d 909

## LAWYER DISCIPLINARY BOARD, Petitioner,

v.

### Eugene M. SIMMONS, Defendant.

No. 32761.

Supreme Court of Appeals of West Virginia.

Submitted: June 7, 2006.

Decided: June 29, 2006.

Andrea J. Hinerman, Office of Disciplinary Counsel, Charleston, for Petitioner.

Eugene Simmons, Esq., Marlinton, Defendant, *Pro se.*

PER CURIAM.

This is a lawyer disciplinary proceeding brought against Eugene M. Simmons by the Lawyer Disciplinary Board ("Board") arising from charges issued against the respondent for multiple violations of the *West Virginia Rules of Professional Conduct.* The respondent entered into a stipulation with respect to the factual allegations in the statement of charges. On October 19, 2005, a Hearing Panel Subcommittee ("Panel") of the Board conducted a hearing after which the Panel issued its report setting forth findings of fact, conclusions of law and recommended sanctions. The respondent filed objections to the

Panel's recommendations that he later withdrew.

We adopt the Hearing Panel Subcommittee's recommendations as modified.

## I.

This matter arises out of complaints filed by four of the respondent's former clients. On May 24, 2005, the Investigative Panel of the Board filed a "Statement of Charges" against the respondent, Eugene M. Simmons. The matter was assigned to a Board Hearing Panel Subcommittee. The Panel's report concludes that the respondent violated Rules 1.3, 1.4(a), and 1.4(b) of the *West Virginia Rules of Professional Conduct.*[1] As discussed *infra,* we agree with the findings of the Panel that the respondent violated the *West Virginia Rules of Professional Conduct.* However, it is the decision of this Court to modify the sanctions to be imposed.

In the first count of the statement of charges, a complainant, Demetria Rossetti ("Rossetti"), retained the respondent in February 1999 to serve as the estate attorney for her father's estate. Rossetti paid the respondent a total of $1,000.00 for the respondent's services.

In July 1999, the respondent indicated to Rossetti that the estate could be closed upon payment of the estate bills. Shortly thereafter, Rossetti paid the estate bills in full. Rossetti subsequently called the respondent numerous times over a period of nearly eleven months asking when the estate could be settled. The respondent advised Rossetti to "just wait." The respondent indicated that it could take some time, but provided no additional information.

In May 2000, nearly one year after the estate bills had been paid, Rossetti called the courthouse and discovered that the respondent had never filed the final settlement of the estate. Rossetti then went to the fiducia-ry commissioner and finalized the estate without the assistance of the respondent.

The record suggests that none of the fee paid by Mrs. Rossetti was ever returned by the respondent.

In the second count of the charges, William L. Vaughan ("Vaughan") retained the respondent in early 2000 to represent him in a civil action involving real estate jointly owned by Vaughan and two other individuals. Vaughan paid respondent a $600.00 retainer for his services. In the course of the civil action, the respondent failed to notify Vaughan of multiple scheduled hearings.

On March 1, 2002, the opposing party in the litigation filed a motion to dismiss under Rule 41 of the *West Virginia Rules of Civil Procedure.* The respondent failed to file a response to the motion. On May 27, 2003, the case was dismissed as a consequence of the respondent's failure to act. On July 22, 2003, the respondent filed a "Motion to Retain Action Upon Docket." This motion was granted on January 22, 2004.

After the ethics complaint was filed the respondent returned $600.00 to Mr. Vaughan.

In the third count of the charges, complainants Ralph K. McKeever and his brother Marion A. McKeever ("McKeevers") hired the respondent in July 2000 to represent them regarding their parents' estate. The McKeevers paid the respondent a $4,000.00 retainer for his services.

The respondent prepared a civil complaint against the personal representative of the parents' estate on behalf of the McKeevers, but failed to file the suit. McKeevers' siblings then instituted a partition suit against the McKeevers to compel the sale of the family farm inherited by the McKeevers and their siblings. The respondent filed an answer and a counterclaim—designated as a "Cross Complaint"—asserting a claim on behalf of the McKeevers for wrongful conversion of estate funds. Without the knowledge

---

1. *West Virginia Rules of Professional Conduct,* Rule 1.3 states:
 A lawyer shall act with reasonable diligence and promptness in representing a client.
 Rule 1.4(a) and (b) state as follows:
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

or consent of the McKeevers, the respondent dismissed the counterclaim without prejudice and thereafter failed to pursue the counterclaim issues. As a consequence of the failures of the respondent, the McKeevers terminated the employment of the respondent and hired other counsel.

The record does not indicate that any of the retainer fee was returned to the McKeevers.

In the fourth count, Rodney K. Stone ("Stone") paid the respondent a $1,000.00 retainer in August 2002 to represent him regarding the potential sale of two parcels of real estate (one in Jackson County and one in Pocahontas County) left by Stone's father to Stone and his two brothers. The address of one brother was unknown. The respondent advised Stone to file a partition suit in Pocahontas County to resolve the matter. Stone wanted the property to be sold on the open market rather than by auction. The respondent failed to pursue Stone's desire to sell the property on the open market.

From August 2002 to December of 2002, the respondent failed to respond to telephone calls or to reply to any correspondence from Stone requesting information. In January 2003, the respondent advised Stone that he would "talk to a judge" about the matter and would write Stone a letter "after President's Day."

After failing to timely hear from the respondent, Stone terminated the respondent's representation, and in June 2003, retained new counsel to complete the sale of the property.

None of the $1,000.00 retainer was returned to Mr. Stone.

In response to these four charges, the respondent entered into a "Stipulation Regarding Findings of Fact, Conclusions of Law and Recommended Discipline" ("stipulations"). The matter proceeded to hearing before the Panel where the respondent appeared *pro se*. The Panel considered the testimony of the respondent, the stipulations, and argument of the respondent and counsel for the Office of Disciplinary Counsel. On January 4, 2006, the Panel filed its report setting forth its findings of fact, conclusions of law, sanctions and recommended discipline.

Pursuant to Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure*, the Panel also considered aggravating and mitigating factors. Aggravating factors included that the respondent has in past years been twice suspended from the practice of law, received two admonishments by the Investigative Panel of the Lawyer Disciplinary Board, and reprimanded once by this Court.[2] The respondent expressed remorse to the Panel as a mitigating factor.

In consideration of each of these factors, the Panel recommended the following disciplinary measures:

1. A suspension of twenty (20) days pursuant to Rule 3.15(8) of the Rules of Lawyer Disciplinary Procedure and that reinstatement be made pursuant to Rule 3.31 of the Rules of Lawyer Disciplinary Procedure.

2. Restitution in the form of $1000 to Mrs. Rossetti, $4000.00 to the McKeever brothers and $1000.00 to Mr. Stone.

3. The Respondent shall sign and follow a plan of supervised practice for a period of one year with a supervision attorney of the Respondent's choice, said supervisor to be approved by the ODC [Office of Disciplinary Counsel] and be available to respond to inquiries by the ODC. The supervisor shall first meet with Respondent to conduct an initial review of Respondent's office practices, focusing upon calendaring, scheduling, a "tickler" system, mail handling, returning telephone calls and advising clients of the status of cases by mail. The Respondent shall also report to the

---

**2.** The first suspension was for six months on November 30, 1990, for entering into business transactions with a client without adequate disclosures. The second suspension was for one month in November of 1995 for lack of diligence, failure to communicate, failure to return files and failure to notify clients of his initial suspension. On May 20, 1994, this Court ordered a reprimand and ordered the respondent to pass the Multi–State Professional Responsibility Examination prior to reinstatement. Additionally, the Investigative Panel of the Lawyers Disciplinary Board admonished the respondent twice (in 1986 and 1993).

supervision attorney the status of all his legal matters he has undertaken, report any oral or written complaints he has received from his clients or the ODC, and report any letters or other inquiries to which he has not yet responded;

4. Respondent shall complete an additional three (3) hours of CLE [continuing legal education] during 2004–2006 reporting period, specifically in office management, over and above the three (3) hours already required in ethics, office management, substance abuse or elimination of bias in the legal profession; and

5. Respondent shall pay the costs incurred in this disciplinary proceeding.

Pursuant to Rule 3.11 of the *West Virginia Rules of Lawyer Disciplinary Procedure,* the respondent filed, with this Court, his objection to the Panel's report. While the respondent admitted to the underlying facts in this case, he denies that his actions rise to any level as to show a lack of diligence or that he is unfit to be trusted with the duties of the legal profession. The respondent further suggested a program of community service or *pro bono* work. However, in a letter dated March 9, 2006, the respondent withdrew is objection to the recommendation of the Panel.

## II.

■ Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994) states:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Under Rule 3.15 of the *West Virginia Rules of Lawyer Disciplinary Procedure,* the following punishments may be imposed in a lawyer disciplinary proceeding: (1) probation; (2) restitution; (3) limitation on the nature and extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

Syllabus Point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998) states as follows:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

■ Finally, Syllabus Point 3 of *Committee on Legal v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987) states:

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Lawyer disciplinary actions are designed to discipline lawyers who engaged in the practice of law and failed to meet the expected standards of the profession.

## III.

■ Upon consideration of the foregoing, we conclude that the respondent (a) failed to exercise reasonable diligence and prompt-

ness in representing his clients, (b) failed to appear for court hearings on numerous occasions, (c) failed to keep his clients reasonably informed about the status of his clients' matters, and (d) failed to explain necessary matters for his clients to make informed decisions. This conduct is unacceptable and constitutes violations of Rules 1.3, 1.4(a), and 1.4(b) of the *West Virginia Rules of Professional Conduct*. The respondent's conduct has not only brought injury to his clients, it has also facilitated a lessening of public confidence in the legal profession.

 Mindful of the guidelines established by this Court, and pursuant to Rule 3.15 of the *West Virginia Rules of Lawyer Disciplinary Procedure*, we adopt the recommended sanctions of the Panel except with respect to continuing legal education requirements. We, therefore, impose the following sanctions on the respondent:

1. Suspension of twenty (20) days pursuant to Rule 3.15(8) of the *Rules of Lawyer Disciplinary Procedure* with reinstatement to follow in accordance with Rule 3.31 of the *Rules of Lawyer Disciplinary Procedure;* [3]

2. Restitution in the amount of $1,000.00 is to be made to Mrs. Rossetti, $4,000.00 to the McKeever brothers, and $1,000.00 to Mr. Stone. Restitution is to be made within sixty (60) days from the date this opinion is handed down by this Court;

3. Supervised practice for a period of one year following reinstatement;

4. Completion of six (6) hours of continuing legal education ("CLE") in office management and three (3) hours of CLE in ethics, over and above the three hours required. The additional hours of CLE shall be completed prior to the conclusion of the period of supervised practice; and,

---

3. We note here that while we approve the twenty-day suspension in this case, we express a concern with the imposition of short suspension periods in disciplinary cases. We believe that short suspensions may do more harm than good, especially where a lawyer is a sole practitioner intending to continue in the practice of law. During the suspension period, the lawyer's clients will likely be left without representation.

5. Respondent shall pay the costs incurred in this disciplinary proceeding as determined by the Board to be $1,070.21.

These sanctions will properly punish the respondent, should be sufficiently harsh to deter other attorneys from acting in a similar manner, and will serve as a safeguard for the public's faith in ethical standards of attorneys.

Recommendation Modified.

Additionally, the lawyer, absent provisions for substitute counsel, will be placed in the untenable position of having to explain to the clients, the status of their cases without engaging in "the practice of law." When a suspension is warranted, it should be for a longer period of time, then it may serve as an effective disciplinary tool and as a means of restoring public confidence in the legal system.