IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-0005

_____

FILED

**January 17, 2013**
released at 3:00 p.m.
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

JOHN P. SULLIVAN,
Respondent

_____

LAWYER DISCIPLINARY PROCEEDING

SUSPENSION AND OTHER SANCTIONS

_____

Submitted: January 9, 2013
Filed: January 17, 2013

Renée N. Frymyer, Esq.                    John P. Sullivan, Esq.
Lawyer Disciplinary Counsel               Charleston, West Virginia
Office of Disciplinary Counsel            *Pro Se*
Charleston, West Virginia                 Respondent
Attorney for Petitioner

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS


"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

Per curiam:

This is a lawyer disciplinary proceeding brought against John P. Sullivan by the Office of Disciplinary Counsel ("the ODC") on behalf of the Lawyer Disciplinary Board ("the Board"). The Respondent failed to communicate with and assist his client in correcting a criminal sentencing order, and failed to respond to lawful requests for information by the ODC. The Board found that the Respondent had violated the *Rules of Professional Conduct* and recommended a number of sanctions, including that the Respondent be reprimanded. We do not concur with the Board's recommended disposition.

## I. *Standard of Review*

In Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), we made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect and reassure the public as to the reliability and integrity of lawyers practicing law in this State, as well as to safeguard the public's interest in the administration of justice. *See* Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). *See also Lawyer Disciplinary Board v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). We

1

have also made clear that we review *de novo* the adjudicatory record made before the Hearing Panel Subcommittee of the Lawyer Disciplinary Board. While we give substantial deference to the Board's findings of fact when those findings are supported by reliable, probative, and substantial evidence on the whole record, we ultimately exercise our own independent judgment as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions. *See*, *e.g*., Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 289, 452 S.E.2d 377, 380 (1994).

## II. *Discussion*

The Respondent, an assistant Kanawha County Public Defender, was appointed to represent Anthony White in a criminal matter. On December 7, 2009, Mr. White entered a guilty plea in the Kanawha County Circuit Court and was sentenced to a 1-5 year term of imprisonment. It took the circuit court approximately nine months to enter a sentencing order. Shortly after entry of the sentencing order, Mr. White was informed by the West Virginia Division of Corrections that his parole eligibility, based on his sentencing order, would be October 1, 2011. Mr. White believed that the sentencing order failed to accurately reflect his effective sentencing date, and that he was actually supposed to be parole eligible on April 11, 2011—almost six months earlier than the date given him by the Division of Corrections.

2

Mr. White, and members of Mr. White's family, contacted the Respondent and requested that he act to correct the sentencing order. The Respondent promised that he would look into the issue. Hearing nothing from the Respondent, Mr. White and his family made repeated efforts to contact the Respondent, leaving messages at the Respondent's office, and even leaving a message with one of the Respondent's supervisors. However, the Respondent did not respond to these inquires.

On August 16, 2011, Mr. White sent a notarized complaint to the ODC. In the complaint Mr. White recited the failed efforts to get the Respondent to act on his behalf. By letter dated August 26, 2011, the ODC sent the Respondent a copy of the complaint and directed that he file a verified response within twenty days. The Respondent did not respond. The ODC then mailed, by certified and first class mail, the Respondent a second letter and copy of the complaint, and again directed that he file a verified response within twenty days. The letter also warned the Respondent that if he again failed to respond a subpoena might be issued to require his presence for a sworn statement and that his failure to timely respond may also result in the allegations in Mr. White's complaint being deemed as admitted. The Respondent again failed to respond or even contact the ODC.

On December 15, 2011, the ODC filed a formal Statement of Charges alleging that the Respondent violated the *Rules of Professional Conduct*. Specifically, the Respondent was charged with violating

Rule 1.3, which requires that a lawyer shall act with reasonable diligence and promptness in representing a client;

Rule 1.4, which requires a lawyer to keep clients reasonably informed of the status of their matter and to promptly respond to reasonable requests for information, and to explain matters to clients to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; and

Rule 8.1(b), which makes it a violation of the *Rules* for a lawyer, in connection with a disciplinary proceeding, to knowingly fail to respond to a lawful demand for information unless the information is otherwise protected by *Rules* 1.6 (requiring confidentiality of client information).

The Statement of Charges listed several aggravating factors, including that the Respondent (1) had substantial experience in the practice of law, (2) had been admonished on five separate occasions by the ODC for similar conduct, (3) had demonstrated a pattern and practice of failing to adequately communicate with clients, and (4) had demonstrated a pattern and practice of failing to respond to lawful requests from the ODC.

On February 22, 2012, the Respondent filed an Answer admitting to each of the charged violations. With regard to the violation of Rule 1.3, the Respondent admitted that "Mr. White's requests to [him] were delivered in writing and by phone calls both by [him] and his family[.]" The Respondent further admitted that if he had "acted diligently, a corrected sentencing order could have resulted in an earlier and correct parole date." Regarding the Rule 1.4 violation, the Respondent admitted that he originally told Mr.

4

White, and Mr. White's father, that Mr. White's parole eligibility date was correct, but that he would check the court records to make sure. Despite this promise, the Respondent admitted that he never checked the court records and that he thereafter "failed to return numerous phone calls" from Mr. White and his family. The Respondent also admitted that Mr. White and his family had contacted the Respondent's supervisors at the Public Defender's Office, and that the Respondent assured his supervisors that he would "handle the matter and communicate with Mr. White" but that he "never did so."

Finally, regarding the Rule 8.1 violation, the Respondent stated that he could "offer no justification or explanation" for his conduct, "especially in light of [his] failure to properly respond to previous disciplinary complaints in a proper and timely manner" and in light of his promises to Disciplinary Counsel in the prior cases that he would thereafter timely respond to any future request for information by ODC. The Respondent admitted that he had "failed to live up to those promises."

After receiving the Respondent's Answer, the ODC and Respondent reached an agreement that stipulated to findings of fact, conclusions of law, and recommendation as to discipline. The Respondent expressly acknowledged that this Court was the final arbiter of what sanction might be appropriate, and that we are not bound by the recommendations set forth in the stipulation. The stipulation was jointly introduced into evidence before the Hearing Panel Subcommittee of the Lawyer Disciplinary Board. The Hearing Panel Subcommittee accepted the stipulations, which

5

were incorporated into its Report and recommended sanctions filed with this Court. Pursuant to the stipulated sanctions, it was recommended that the Respondent be reprimanded, agree to a two year supervised practice of law, complete an additional nine hours of Continuing Legal Education (CLE's) in ethics and office management during the 2012-2014 reporting period, and pay the costs of the disciplinary proceeding against him.

Having considered all matters of record, we find the recommended sanctions to be insufficient to protect and reassure the public as to the reliability and integrity of lawyers practicing law in this State, as well as to safeguard the public's interest in the administration of justice. *See* Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, *supra.* The Respondent was previously admonished, on five separate occasions, for similar conduct. In the last of these prior offenses the Respondent pledged to the ODC, and to the Board, that he would be more diligent in representing his clients. However, the record shows that *at the same time he was making this pledge*, the Respondent was ignoring repeated requests from Mr. White and Mr. White's family to take that action necessary to correct a facially inaccurate sentencing order. The Respondent admits that had he acted in the manner required of him by the *Rules of Professional Conduct*, his client "would have been eligible for parole at an earlier date."

Based upon the record as a whole, there is no evidence that a sixth admonishment, even in the heightened form of a public reprimand, would appropriately

6

sanction the respondent attorney, or that it would serve as an effective deterrent to other members of the Bar or maintain public confidence in the ethical standards of the legal profession. We also do not believe that supervised practice alone will be sufficient to protect the public's interest. The Respondent admits that even after one of his supervising attorneys was made aware of Mr. White's issue, and after he promised that supervising attorney to be diligent in responding to Mr. White, he again failed to take any action.

The Statement of Charges asserted that the Respondent had a pattern and practice of failing to adequately communicate with his clients. The Respondent admitted the accuracy of this assertion:

> I cannot deny this pattern, especially with respect to post-sentence cases. I do not put a high priority on post-sentencing matters and tend to postpone working on them in favor of the next hearing and the next trial. This is especially true regarding sentence reconsideration motions. Even if I explicitly tell a client that I will get something done by a certain time, I will often fail to meet that deadline. In the case of Mr. White and his father, I delayed to the point of not responding to legitimate inquiries about the status of the case, even when they were made through my supervisors.

While we appreciate the Respondent's candor, and consider his candor to be a mitigating factor, we do not believe that a reprimand and supervised practice will have the coercive effect of breaking the Respondent's pattern of failing to properly communicate with his clients. The Respondent's client, Mr. White, was deprived of an

7

opportunity to regain his freedom for approximately six months because of a facially inaccurate commitment order. The Respondent acknowledges that the sentencing order was facially inaccurate and capable of being easily corrected. However, he did nothing, and his inaction resulted in his client suffering the very real injury of remaining imprisoned six months longer than may have been required had the sentencing order been corrected.

In fashioning a sanction, we have weighed all of the factors set forth in Rule 3.16 of the *Rules of Professional Responsibility*, including the Respondent's extensive history of similar violations, and have carefully considered what might make the Respondent more attentive to his clients and his ethical obligations toward those clients. While the Respondent perceives a certain area of his practice to be mundane and uninteresting, this is not an excuse for neglecting his clients who have a need for his legal services. As Mr. White's case starkly illustrates, what the Respondent perceived as mundane was of significant importance to Mr. White—his very freedom was at issue. We have also considered our duty to protect the public from the Respondent's subprofessional legal representation. Considering these and other factors, we believe that the Respondent's conduct warrants a suspension from the practice of law and other sanctions, and that such sanctions are consistent with those imposed in other cases involving, in part or whole, conduct similar to that at issue in this case. *See, e.g., Lawyer Disciplinary Board v. Simmons*, 219 W.Va. 223, 632 S.E.2d 909 (2006) (twenty-day suspension was warranted where respondent lawyer violated Rules 1.3 and 1.4 of the

8

*Rules of Professional Conduct* by failing to timely communicate with clients and keep clients informed about the status of their matters).

### III. *Conclusion*

Accordingly, the Respondent's license to practice law is suspended for a period of thirty days. The Respondent shall comply with the duties of a suspended lawyer as outlined in Rule 3.28 of the *Rules of Lawyer Disciplinary Procedure*. Upon reinstatement the Respondent shall (1) sign and follow a plan of supervised practice for a period of two years with a supervising attorney of Respondent's choice, conditioned on the supervising attorney being approved by the ODC and the Respondent agreeing to permit the supervising attorney to respond to inquiries by the ODC; (2) complete an additional (over and above that already required) nine hours of continuing legal education during the 2012-2014 reporting period, which additional hours shall be specifically in the area of ethics and office management, and (3) pursuant to Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure*, pay the costs of this disciplinary proceeding.

Law license suspended and other sanctions imposed.