# Illinois Official Reports

## Appellate Court

---

### *People v. Harris*, 2018 IL App (3d) 170365

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES E. HARRIS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-17-0365 |
| Filed | May 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 96-CF-1070; the Hon. Thomas C. Berglund, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Kelly M. Taylor, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, Lawrence M. Bauer, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

¶ 1    Defendant, James E. Harris, appeals from the trial court's denial of his motion to reconsider sentence. Defendant argues the court abused its discretion when it denied his motion because defendant presented evidence of severe health problems that warranted a reduction in his sentence. We affirm.

¶ 2                                              FACTS

¶ 3    In December 1996, the State charged defendant with two counts of armed robbery (720 ILCS 5/18-2 (West 1996)). Both counts were Class X felonies. The evidence at defendant's jury trial established that, on December 16, 1996, at 11 p.m., defendant robbed a Clark gas station in East Moline. Defendant held a knife to the clerk's side and told the clerk to open the cash register. Defendant absconded with $30 from the cash register. Two and a half hours later, at 1:30 a.m. on December 17, 1996, defendant robbed a Clark gas station in Moline. Defendant held a knife to the gas station clerk's chest and demanded money. The clerk gave defendant $50 from the cash register. The jury found defendant guilty of both offenses.

¶ 4    Defendant's presentence investigation report (PSI) stated defendant was then 44 years of age. Defendant's health was then "all right," but defendant was suffering from headaches and had previously undergone surgery on his back.

¶ 5    The PSI also established that defendant had an extensive criminal history. Defendant's criminal history included three prior felony convictions, seven prior misdemeanor convictions, and multiple traffic offenses. Defendant committed the three prior felony convictions over the course of three days, between December 16 and 18, 1990. During this period, defendant obtained money from three different store clerks by splashing gasoline on the store counter and threatening to light it on fire. On April 10, 1991, defendant pled guilty to the three armed robbery charges, and the court sentenced defendant to 12 years' imprisonment. Defendant was released from prison on June 17, 1996, and placed on parole. Less than six months from his parole date, defendant committed the two armed robberies at issue in this case.

¶ 6    On March 17, 1997, Judge Donald O'Shea conducted a sentencing hearing. The State argued, from defendant's PSI, that defendant's criminal history warranted a lengthy sentence. Defense counsel argued that defendant would be at an advanced age when he was released from prison. Counsel estimated that defendant would be 50 years old upon release if the court imposed a 10-year sentence, and if the court imposed a 20-year sentence, defendant would be 60 years old at the time of release. The court clarified that defendant was then 44 years old.

¶ 7    In his ruling, Judge O'Shea found, in aggravation, that defendant had an extensive criminal history, including his three prior armed robbery convictions. Defendant's armed robbery convictions made "protection of the public *** a high priority." Defendant also demonstrated a lack of rehabilitative potential and a complete lack of remorse. Judge O'Shea sentenced defendant to two concurrent terms of 50 years' imprisonment. Defense counsel did not file a motion to reconsider the sentence imposed by the trial court.

¶ 8    On November 8, 2005, defendant filed a motion for leave to file the successive postconviction petition that gave rise to this appeal. The motion asserted that defendant received ineffective assistance of trial counsel due to counsel's failure to file a timely motion to reconsider sentence. The court denied the motion. On appeal, we remanded the cause for

compliance with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). *People v. Harris*, No. 3-06-0103 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9 On remand, defense counsel filed an amended motion for leave to file a successive postconviction petition and a compliant Rule 651(c) certificate. The amended motion once again asserted that trial counsel was ineffective because counsel did not file a timely motion to reconsider the sentence imposed by Judge O'Shea.

¶ 10 Judge Walter Braud granted defendant leave to file a successive postconviction petition. On May 11, 2015, following defendant's filing of the successive petition, Judge Braud granted postconviction relief and allowed defendant to file a motion to reconsider the sentence.

¶ 11 In his 2015 motion to reconsider the sentence imposed in 1997, defendant claimed Judge O'Shea failed to consider defendant's "relatively advanced age" of 44 years when determining his sentence. Defendant also requested a reduction in the length of time remaining on his 50-year sentence on the grounds that defendant was no longer a danger to the public because of his advanced age and current medical conditions.

¶ 12 After hearing the arguments of the parties, Judge Braud denied defendant's motion to reconsider sentence. Thereafter, defendant filed a petition for relief from judgment that sought to vacate the denial of his motion to reconsider the sentence. 735 ILCS 5/2-1401 (West 2014). Judge William McNeal granted defendant's section 2-1401 petition and scheduled a new hearing on defendant's 2015 motion to reconsider the sentence imposed in 1997.

¶ 13 Following Judge McNeal's ruling, defendant filed an amended motion to reconsider sentence. The State did not file an objection. The amended motion included defendant's claim that Judge O'Shea failed to consider defendant's advanced age and declining health when he imposed defendant's sentence. In addition, the amended petition requested that the trial court reduce defendant's sentence and create precedent for a compassionate release policy similar to that applicable in federal court.

¶ 14 At the hearing on defendant's amended motion, defendant testified that, since the 1997 sentencing hearing, he had suffered from Parkinson's disease, a mass on his brain, a degenerative back disease, the effects of a stroke, and he had undergone surgery on his prostate. After hearing the arguments of the parties, Judge Thomas Berglund found that Judge O'Shea had considered the factors in aggravation and mitigation and imposed a sentence that reflected the seriousness of the underlying offenses and emphasized deterrence. Judge Berglund denied defendant's motion. Defendant appeals.

¶ 15                                          ANALYSIS

¶ 16 Defendant argues that Judge Berglund abused his discretion by denying defendant's amended motion to reconsider sentence because defendant's health had changed drastically following the date of sentencing. Defendant also argues his 1997 sentence was excessive in light of the facts of the case, mitigating evidence, and his age at the time of sentencing. Alternatively, if this court affirms Judge Berglund's ruling denying defendant's amended motion to reconsider sentence, defendant asks this court to adopt a policy, similar to the federal compassionate release policy, and reduce his sentence based on defendant's undisputed decline in health while serving the 50-year sentence.

¶ 17 The sentencing judge's decision is entitled to great deference because he was in a superior position to weigh defendant's credibility, demeanor, general moral character, mentality, social

environment, habits, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A defendant's sentence should not be modified without a finding that the sentence originally imposed resulted from the trial court's abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Such an abuse of discretion exists where the sentence "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 18   This case presents an unusual situation because defendant requested the court to reconsider punishment nearly 20 years after the sentence was imposed by Judge O'Shea. In stark contrast, generally, the procedural process requires a defendant to submit a request to reconsider a sentence within 30 days of the entry of the judgment. *People v. Bailey*, 2014 IL 115459, ¶ 8. Nevertheless, our review in this case is guided by the same principles we would apply to a motion to reconsider a sentence filed within 30 days from the date of sentencing.

¶ 19   It is well established that "[w]hen ruling on a motion to reconsider a sentence, the trial court should limit itself to determining whether the initial sentence was correct; it should not be placed in the position of essentially conducting a completely new sentencing hearing based on evidence that did not exist when defendant was originally sentenced." *People v. Vernon*, 285 Ill. App. 3d 302, 304 (1996). The case law provides that "[t]he purpose of a motion to reconsider sentence is not to conduct a new sentencing hearing, but rather to bring to the trial court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence that was not available at the time of the hearing." *People v. Burnett*, 237 Ill. 2d 381, 387 (2010).

¶ 20   Applying the above principles, we are mindful that Judge Berglund could not conduct a new sentencing hearing with the full benefit of two decades worth of hindsight. Instead, Judge Berglund was required to review Judge O'Shea's 1997 decision based on the circumstances available for Judge O'Shea's consideration in 1997.

¶ 21   Looking back to the 1997 sentencing hearing, the record shows defendant had been found guilty of two Class X felonies for separate armed robberies committed hours apart in December 1996. Both of these convictions carried a nonextended term sentence of 6 to 30 years' imprisonment. 720 ILCS 5/18-2(b) (West 1996); 730 ILCS 5/5-8-1(a)(3) (West 1996). However, because the record established that defendant's conduct threatened serious harm and defendant had a significant history of prior criminal activity, defendant was eligible for an extended-term sentence of 30 to 60 years' imprisonment. 730 ILCS 5/5-8-2(a)(2) (West 1996); *id.* §§ 5-5-3.2(a)(1), (a)(3). Defendant's 50-year sentence, therefore, fell within the applicable range.

¶ 22   When determining defendant's sentence, Judge O'Shea made findings of record that were available for Judge Berglund's re-examination 20 years later. Specifically, Judge O'Shea found, in aggravation, that defendant had three prior armed robbery convictions. *Id.* § 5-5-3.2(a)(3). Each of these prior armed robbery convictions involved threats of violence—defendant threatened to set fire to three different businesses. Defendant received a total sentence of 12 years' imprisonment for these prior armed robberies. Less than 6 months after his release from the Illinois Department of Corrections, and after serving the 12-year term of imprisonment, defendant committed the two separate armed robberies at issue in this case. Again, the armed robberies at issue involved separate criminal acts involving threats of violence in that defendant held a knife to two different gas station clerks while demanding money.

¶ 23    Judge O'Shea's remarks before announcing defendant's sentence reveal the court was aware that defendant was then 44 years of age and would be an elderly person at the time of his release. During the 1997 sentencing hearing, Judge O'Shea received no evidence that defendant then suffered from any major health or medical issues. To the contrary, defendant's PSI documented that, at the time of sentencing in 1997, defendant's health was "all right." The PSI also noted that defendant suffered from headaches and had previously undergone back surgery. At the time of sentencing, Judge O'Shea implicitly considered the fact that this defendant would likely experience declining health due to age-related diseases, reasonably likely to occur during the duration of a 50-year sentence.

¶ 24    Judge Berglund properly focused his review on whether the record established that Judge O'Shea's sentencing decision was manifestly disproportionate to the nature of the two armed robbery offenses. After reviewing the record, we agree with Judge Berglund's determination that Judge O'Shea did not abuse his discretion by imposing a sentence of 50 years' imprisonment for defendant's fourth and fifth convictions for armed robberies. We are especially mindful of the fact that defendant committed five violent Class X felonies in a six-year time frame, and the two armed robberies at issue occurred less than six months after he was released from prison. Judge Berglund correctly denied defendant's motion to reconsider sentence.

¶ 25    In coming to the above conclusion, we reject defendant's contention that either Judge Berglund or this court could develop an approach to modify an appropriate sentence due to changes in defendant's health while serving punishment properly imposed by the trial court. Such an approach would open the flood gates to other inmates serving lengthy prison sentences to request a sentence reduction based solely on the unavoidable decline in health that impacts anyone reaching an advanced age while incarcerated.

¶ 26    Moreover, Illinois law does not provide for this type of compassionate release program, and we are without authority to apply the federal compassionate release standards to an Illinois case. See 18 U.S.C. § 3582(c)(1)(A) (2012). Therefore, absent enaction of legislation on this type of sentence-reduction program, neither Judge Berglund nor this court can exercise a form of judicial "compassion" to reduce the term of defendant's sentence.

¶ 27                                    CONCLUSION
¶ 28    The judgment of the circuit court of Rock Island County is affirmed.

¶ 29    Affirmed.